| | | |
|---|---|---|
| DORA ALMA ANDRADE ZEPEDA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. EP-17-CV-267-MAT |
| | § | |
| NANCY A. BERRYHILL, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Dora Alma Andrade Zepeda ("Plaintiff") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. (Pl.'s Compl., ECF No. 5, at 1). The parties consented to the transfer of the case to this Court for determination and entry of judgment. *See* 28 U.S.C. § 636(c); Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision will be **AFFIRMED**.

## I.    PROCEDURAL HISTORY

Plaintiff was fifty-seven years old at the time of the decision of the Administrative Law Judge ("ALJ"), dated July 7, 2016. (R. 30, 189).[1] Her pertinent job experience included work as a housekeeping cleaner, mail clerk, small product assembler, and electronics inspector. (R. 29, 310). On December 2, 2013, Plaintiff filed an application for a period of disability and DIB and an

---

[1] Reference to the record of administrative proceedings is designated by (R. [page number(s)]).

1

application for SSI, in which she alleged disability beginning on June 1, 2012, due to diabetes, and conditions, injuries, or illnesses related to her back, bones, and cholesterol. (R. 189, 196, 58, 66). After her applications were denied initially and upon reconsideration, Plaintiff requested a hearing by an ALJ. (R. 96–103, 108–13, 114–15).

On May 19, 2016, a hearing was conducted before the ALJ. (R. 36–57). On July 7, 2016, the ALJ issued a written decision denying benefits on the ground that Plaintiff was capable of performing her past relevant work as a housekeeping cleaner, mail clerk, small product assembler, and electronics inspector. (R. 20–30). On June 29, 2017, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R. 1–6).

In his written decision, the ALJ found that Plaintiff had the following severe impairments: lumbar spondylosis with multi-level degenerative intervertebral disc derangement with radicular pain; chronic obstructive pulmonary disease; hypertension; diabetes mellitus; osteoarthritis of the shoulders bilaterally; and obesity. (R. 23). However, the ALJ also found that these impairments or combination of impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24). The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), and was limited to "occasional stooping, kneeling, crouching, and crawling, . . . [and] occasional overhead reaching bilaterally." (R. 25).

Plaintiff argues: (1) that her lumbar spine impairment meets the requirements of Listing 1.04(A) of the Social Security Administration Regulations (the "Regulations") and (2) that the ALJ's RFC finding is not supported by substantial evidence. (Pl.'s Br., ECF No. 13, at 2–3).

## II.    DISCUSSION

A. STANDARD OF REVIEW

The Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole, and whether the Commissioner applied the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)) (internal quotation marks omitted). Substantial evidence "is such relevant evidence as a reasonable mind might accept to support a conclusion" and is more than a scintilla, but less than a preponderance. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan*, 38 F.3d at 236; *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993)). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotation marks omitted).

In determining whether there is substantial evidence to support the findings of the Commissioner, the Court may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (citation omitted). "Conflicts in evidence are for the [Commissioner] and not the courts to resolve." *Spellman*, 1 F.3d at 360 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)) (internal quotation marks omitted). If the Commissioner's findings are supported by substantial evidence, "they are conclusive and must be affirmed." *Id.* However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455.

3

B. The ALJ Applied the Proper Legal Standard and His Finding That Plaintiff's Lumbar Spine Impairment Does Not Meet the Requirements of Listing 1.04(A) Is Supported by Substantial Evidence

Plaintiff argues that her lumbar spine impairment meets the requirements of Listing 1.04(A) of 20 C.F.R. Part 404, Subpart P, Appendix 1 for disorders of the spine. (Pl.'s Br., ECF No. 13, at 3–4). She claims that the medical record in evidence shows that her disorder has resulted in "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor and sensory loss, and a positive straight-leg raising test," as required by Listing 1.04(A). *Id.* at 6. Plaintiff argues: (1) that the ALJ's finding results from legal error because he does not explain his finding, (2) that the ALJ's finding is not supported by substantial evidence and (3) that "the physical examinations were cursory and incomplete," and therefore, the ALJ should have ordered further review or consultation in order to fully develop the record. *Id.* at 7.

In response, the Commissioner argues that Plaintiff has not met "her burden of presenting evidence of the necessary Listing criteria because her medical evidence does not document the presence of motor loss." (Comm'r's Br., ECF No. 15, at 5). The Commissioner also argues that the physical examinations were complete and included "specific findings of normal muscle strength." *Id.* at 7. The Commissioner further notes that the agency obtained a consultative examination, "which resulted in Dr. Barahona's December 2013 findings of intact muscle strength and no atrophy, demonstrating an absence of motor loss for purpose of Listing 1.04(A)." *Id.*

i. *The ALJ Did Not Err in His Explanation for Finding that Plaintiff's Impairment Does Not Meet the Criteria of Listing 1.04(A)*

Plaintiff argues that the ALJ's explanation for his finding that her impairment does not meet the requirements for Listing 1.04(A) is insufficient and is, therefore, legal error. (Pl's. Br., ECF No. 13, at 4). In his decision, the ALJ found that Plaintiff's impairment(s) did not meet or

4

equal Listing 1.04, disorders of the spine, "because the claimant's medical evidence record did not show the compromise of a nerve root or of the spinal cord with limitation of motion in the spine, spinal arachoniditis [sic], or the inability to ambulate effectively." (R. 24).

When determining whether a claimant is disabled under the Regulations, the ALJ conducts a "five-step sequential evaluation process." 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4). At the third step, the ALJ determines whether the claimant has an impairment "that meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement . . . ." *Id.* at §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii). If so, the claimant will be found to be disabled. *Id.*

Listing 1.04 governs disorders of the spine, resulting in compromise of a nerve root or the spinal cord. *Id.* at Part 404, Subpart P, Appendix 1, Listing 1.04. To be found disabled under this listing, the plaintiff is required to prove the criteria of one of three subsections. Subsection A requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id.* at Part 404, Subpart P, Appendix 1, Listing 1.04(A). Subsection B requires evidence of "[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." *Id.* at Part 404, Subpart P, Appendix 1, Listing 1.04(B). Subsection C requires evidence of "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." *Id.* at Part 404, Subpart P, Appendix 1, Listing 1.04(C).

5

Critically, the ALJ's explanation identifies one element from each of the three subsections of Listing 1.04 that was not demonstrated in the medical evidence in the record. Thus, as it relates to Plaintiff's claim of error, the ALJ found that she was not disabled under Listing 1.04(A) because the "medical evidence record did not show the compromise of a nerve root or of the spinal cord with limitation of motion in the spine." (R. 24).

Plaintiff argues that this explanation is insufficient, constituting a "bare conclusion [that] is beyond meaningful judicial review," relying on the Fifth Circuit's opinion in *Audler v. Astrue*. (Pl's. Br., ECF No. 13, at 4 (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). In *Audler*, the Fifth Circuit reviewed the ALJ's decision at step three where the ALJ "did not identify the listed impairment for which Audler's symptoms fail to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment." *Audler*, 501 F.3d at 448. The Fifth Circuit found this "bare conclusion [ ] beyond meaningful judicial review." *Id.* (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). The Fifth Circuit stated that, pursuant to 42 U.S.C. § 405(b)(1):

> the ALJ was required to discuss the evidence offered in support of Audler's claim for disability and to explain why she found Audler not to be disabled at that step. Although the ALJ is not always required to do an exhaustive point-by-point discussion, in this case, the ALJ offered nothing to support her conclusion at this step and because she did not, "we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not."

*Id.* (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

In contrast to the ALJ's decision in *Audler*, the ALJ in the instant case identified a specific listing that was not met, Listing 1.04, disorders of the spine, among several other Listings that were also not met by the medical evidence. (R. 24). In further detail, and key to this issue, the ALJ stated the required element of each of the subsections of Listing 1.04 that was unsupported by the

6

evidence. This detail sufficiently directs the Court to the ALJ's reason for finding that Plaintiff's impairment does not meet or equal Listing 1.04. As to the specific subsection at issue, the ALJ stated that the medical evidence in the record did not show that Plaintiff's impairment(s) met or equaled Listing 1.04, as it relates specifically, but implicitly, to Listing 1.04(A), because it did not show "limitation of motion in the spine." *Id.* This is more than a bare conclusion and allows for meaningful judicial review as to whether the medical record evidence shows that there is no limitation of motion in the spine, one of the criteria to meet Listing 1.04(A). Accordingly, the Court finds that the ALJ sufficiently explained the reason for his finding that Listing 1.04(A) was not met or equaled, and, therefore, did not err.

> ii.    *The ALJ's Finding Is Supported by Substantial Evidence*

Plaintiff argues the existence of each individual requirement of Listing 1.04(A) with specific citations to the record. (Pl.'s Br., ECF No. 13, at 5–7). The Commissioner, in her response, focuses on the lack of evidence of the requirement of motor loss. (Comm'r's Br., ECF No. 15, at 5–7). However, the Court limits its review to evidence of limitation of motion in the spine because that is the element that the ALJ states is lacking. (R. 24); *see Newton*, 209 F.3d at 455 ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council.").

"The term 'disability' means [ ] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). When determining whether a claimant is disabled at the third step of the sequential evaluation process, the ALJ determines whether the medical evidence meets or equals the criteria of a listed impairment in Appendix 1 to Subpart P of Part 404

of the Regulations and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii). To meet the duration requirement, the impairment must have lasted or must be expected to last for a continuous period of at least twelve months, unless it is expected to result in death. 20 C.F.R. §§ 404.1509 & 416.909.

"A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptom . . . ." 20 C.F.R. §§ 404.1508 & 416.908 (1991).[2] Evidence to establish an impairment must be provided by "acceptable medical sources:" licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists (the latter four for establishing limited impairments within the fields of their specialties). *Id.* at §§ 404.1513(a) & 416.913(a) (2013).[3] Other sources, such as therapists, may provide evidence tending to show the severity of an impairment. *Id.* at §§ 404.1513(d) & 416.913(d) (2013).[4]

The Listing of Impairments in Appendix 1 describes conditions and impairments that are sufficiently severe to prevent an individual from engaging in *any* gainful activity, not just "substantial gainful activity," regardless of age, education or work experience. 20 C.F.R. §§ 404.1525(a) & 416.925(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Thus, a claimant is automatically entitled to benefits if her impairment meets the duration requirement and meets or equals the criteria of one of the listed impairments. 20 C.F.R. §§ 404.1520(d) & 416.920(d). Because the Listings "were designed to operate as a presumption of disability that makes further

---

[2] Effective March 27, 2017, these regulations were removed. The ALJ's decision was issued prior to March 27, 2017. (R. 30). Accordingly, where the previous and current regulations differ, the Court considers the regulations that were in effect at the time of the ALJ's decision. *See Young v. Berryhill*, 689 F. App'x 819, 821 n.3 (5th Cir. 2017).

[3] *See* footnote 2, *supra.*

[4] *See* footnote 2, *supra.*

inquiry unnecessary," the medical criteria of the Listings are set at "a higher level of severity" than the statutory disability standard. *Zebley*, 493 U.S. at 532.

Plaintiff claims that the medical record evidence shows limitation in her spinal motion, citing three pages of the medical evidence in the record. (Pl's. Br., ECF No. 13, at 6 (citing R. 382, 407, 432)). Page 382 of the record is the first page of a document described as a "Chart Note" from an office visit at Centro de Salud Familiar La Fe on April 18, 2014, signed by a nurse practitioner. (R. 382). This page does not include clinical findings by a licensed physician related to limitation of motion of the spine, but instead, as it relates to the back, sets forth a history of Plaintiff's back pain and pain score. *Id.* Significantly, the "historian" is noted as "self," that is, Plaintiff. *Id.* The Court has found no clinical or other medical finding in this cited evidence of limitation of motion of the spine.[5]

Page 407 of the record is the fifth page of the record of an office visit to UMC Neighborhood Health Center Ysleta on September 2, 2014. (R. 407). The notes of the physical examination of Dr. Sergio Alvarado state that the range of motion ("ROM") of the lumbar spine is limited. *Id.*

Page 432 of the record is the third page of a "Triage Note" dated November 27, 2015, from University Medical Center of El Paso performed by a registered nurse. (R. 432). This page appears to be primarily dedicated to "ID Screening," "Pain Assessment," and "Pain Assessment Details" relating to Plaintiff's back pain. *Id.* However, in the pain assessment details, although it notes that the primary pain aggravating factors are "movement," it also states that the primary pain location

---

[5] Likewise, Plaintiff has not pointed to any specific information on this page in support of her argument. Moreover, the "provider" is a nurse practitioner and not a licensed physician, as required by the Regulations to be considered as provided by an acceptable medical source. *See* (R. 386); 20 C.F.R. §§ 404.1513(a) & 416.913(a) (2013).

is the "hip," and makes no mention of motion of the spine. *Id.* The Court has found no clinical or other medical findings on this page of the record related to limitation of motion of the spine.[6]

Of the three pages cited in support by Plaintiff, only one referenced limitation of motion of the spine, which is also the only one of the three pages reflecting an examination performed by a licensed physician. *See* (R. 407). The Court has conducted its own review of the record and has found two other documents providing evidence from acceptable medical sources commenting on the motion of Plaintiff's spine.[7]

In a consultative examination on December 20, 2013, Dr. Jose A. Barahona recorded Plaintiff's ROM in the lumbar spine as: "flexion 20 degrees, extension 10 degrees and lateral 10 degrees." (R. 325). As cited by Plaintiff, and discussed *supra*, on September 2, 2014, Dr. Alvarado noted that Plaintiff's lumbar spine ROM was limited. (R. 407). The Court has found no other mention of limitation of motion of spine until almost a year and a half later, when on February 16, 2016, on an "Emergency Provider Report" from Del Sol Medical Center (COCVH), Dr. Nadah B. Zafar noted that Plaintiff had a full and painless range of motion in her back. (R. 527).

Based on the evidence cited by Plaintiff, the record shows limitation of motion of the spine on only one date, September 2, 2014, which clearly falls short of the twelve-month duration requirement in the Regulations. *See* (R. 407). Furthermore, Plaintiff has not cited Dr. Barahona's ROM measurements taken on December 20, 2013, in support of her argument, and Dr. Barahona does not state that such measurements indicate a limited ROM. However, even construing Dr.

---

[6] As with Plaintiff's argument related to the Chart Note, *see* footnote 5, *supra*, Plaintiff has not pointed to any specific information on this page in support of her argument. Furthermore, the document reflects that a registered nurse, not a licensed physician, attended Plaintiff. (R. 432). Accordingly, per the Regulations, the evidence is not provided by an acceptable medical source. 20 C.F.R. §§ 404.1513(a) & 416.913(a) (2013).

[7] The Court found a third document noting a limitation of motion of the spine. However, the finding was made by a physical therapist, not a licensed physician. *See* (R. 359).

Barahona's ROM measurements in Plaintiff's favor as indicating a limited ROM in her lumbar spine, such evidence would indicate limitation of motion of the spine for a duration of only eight-and-a-half months, which is still shy of the twelve-month duration requirement in the Regulations. Without evidence of limitation of motion of the spine extending beyond these dates, which this Court has not found, the ALJ's finding that Plaintiff's "medical evidence record did not show the compromise of a nerve root or of the spinal cord with limitation of motion in the spine" is supported by substantial evidence. (R. 24).

However, even if this medical evidence were sufficient to meet the criterion of limitation of motion of the spine in Listing 1.04(A), "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler*, 501 F.3d at 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). As pointed out by the Commissioner, Plaintiff has not shown the element of motor loss accompanied by sensory or reflex loss.

Plaintiff argues that motor loss is evidenced in the record at pages 323 and 345 to 361. (Pl.'s Br., ECF No. 13, at 7). Page 323 is the first page of Dr. Barahona's report and does not contain any findings of Dr. Barahona related to motor loss. (R. 323). Rather, on page 3 of Dr. Barahona's "TRC Evaluation," conducted on December 20, 2013, Dr. Barahona notes sensory and strength are both "5/5 to both upper extremities and lower extremities," and also states that no atrophy or deformity was noted. (R. 325).

Pages 345 to 361 are records of Plaintiff's rehabilitation therapy. Although two pages of the medical record state a finding of muscle fatigue or muscle weakness (R. 350, 359), these statements were made by physical therapists and, thus, are not acceptable medical sources to establish an impairment. 20 C.F.R. §§ 404.1513(a) & 416.913(a) (2013); (R. 350, 359). The Court

has found no other medical evidence supporting a finding of motor loss. Rather, spanning two and a half years, four doctors have specifically noted normal strength or motor. *See* (R. 325, 336, 407, 527). Therefore, even if the ALJ erred by basing his finding solely on a lack of evidence of limitation of motion of the spine, such error is harmless because substantial evidence supports a finding that Plaintiff's impairments do not meet or medically equal the severity of Listing 1.04(A), specifically relating to motor loss.

### iii. *The ALJ Did Not Err by Not Ordering Review or Consultation to Further Develop the Record*

Plaintiff argues that the physical examinations were "cursory and incomplete," and, therefore, the ALJ had a duty to more fully develop the record either by submitting the record to a medical expert or by sending Plaintiff for a consultative examination. (Pl.'s Br., ECF No. 13, at 7). According to Plaintiff, if an ALJ does not fulfill this duty, his decision is not substantially justified. *Id.* (citing *Newton*, 209 F.3d at 458). In response, the Commissioner counters that there are specific findings in the record that are relevant to the elements of Listing 1.04(A), and asserts that Plaintiff has cited some of these findings to support his argument that he meets the elements of Listing 1.04(A). (Comm'r's Br., ECF No. 15, at 7).

The Court is not persuaded by Plaintiff's arguments. Plaintiff's assignment of error in this respect is itself cursory as well as conclusory, arguing only that "on review it appears that the physical examinations were cursory and incomplete." (Pl.'s Br., ECF No. 13, at 7). Plaintiff makes this argument after citing the record extensively to support his argument that the medical record reflects that he meets the requirements of Listing 1.04(A). *See id.* at 5–7. Further, the case cited in support by Plaintiff involved the ALJ's failure to obtain supplemental information when she "was faced with what she deemed an incomplete medical history" and "expressed doubts about [the treating physician's] opinions . . . but did not request additional information to eliminate those

12

doubts before rejecting the opinion of the treating physician." *Newton*, 209 F.3d at 458. In the instant case, there is no indication from the ALJ's decision, from Plaintiff's thorough citation to the record, nor from Plaintiff's general conclusion, that the medical history is incomplete or that the ALJ had doubts about any opinions. To the contrary, the medical record spans more than two years with numerous instances of specific findings related to the elements of Listing 1.04(A), as detailed *supra*. Accordingly, the Court finds that the ALJ did not err by not submitting the complete medical record to a medical expert or by not sending Plaintiff for a consultative examination.

C. THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY FINDING IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because "[t]he ALJ failed to fully address Plaintiff's standing and walking abilities." (Pl.'s Br., ECF No. 13, at 8). According to Plaintiff, she is unable to perform the standing and walking requirements of light work. *Id.* Plaintiff claims that the record reflects that she has "testified and reported to her lower back pain which radiates to her lower extremities, as well as experiencing numbness, which it interferes with her ability to stand and walk for extended periods, and that she needs assistance with activities." *Id.* at 10 (citing R. 44–46, 234, 235, 239, 244, 247, 260, 261, 263, 268, 323). Plaintiff asserts that her testimony and reports are supported by the medical evidence relating to her lower back pain and her obesity. *Id.* at 10–11 (citing numerous pages in the record). According to Plaintiff, this medical evidence supports her reports that she cannot stand or walk for extended periods of time, including the amount of time required to perform light work. *Id.* at 11. Plaintiff claims the ALJ erred in failing to address her standing and walking abilities and that this error is not harmless because if the ALJ had reduced the RFC to sedentary work it would have resulted in a finding of disabled after the remaining steps of the sequential evaluation process were considered. *Id.*

In response, the Commissioner claims that Plaintiff's claim that she is unable to perform the standing and walking requirements of light work rests on her own testimony rather than medical findings or opinions in the record. (Comm'r's Br., ECF No. 15, at 9). The Commissioner asserts that the ALJ found that Plaintiff's claims were inconsistent with her daily activities and medical records. *Id.* According to the Commissioner, the ALJ, as the finder of fact, properly resolved the inconsistencies between Plaintiff's testimony and the other medical and non-medical evidence in the record in formulating the RFC. *Id.* at 10 (citing *Selders*, 914 F.2d at 617).

Between steps three and four of the sequential evaluation process, the ALJ makes a finding about the claimant's residual functional capacity "based on all the relevant medical and other evidence in [the] case record . . . ." 20 C.F.R. §§ 404.1520(e) & 416.920(e). The residual functional capacity is the most an individual can do in a work setting despite her physical and mental limitations related to her impairments. *Id.* at §§ 404.1545(a) & 416.945(a). "A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions, may reduce a claimant's ability to do past work and other work." *Id.* at §§ 404.1545(b) & 416.945(a). "If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, [the ALJ] will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities . . . ." SSR 16-3p. The ALJ will also consider the consistency of the claimant's own statements, including statements made under other circumstances and at prior steps of the administrative review process. *Id.*

The ALJ considered Plaintiff's subjective description of her limitations from her testimony at the hearing, including being able to "sit for only half an hour, and having to use a cane to walk."

(R. 26). The ALJ found Plaintiff's testimony misrepresented facts relevant to the issue of disability. *Id.* For example, the ALJ stated that Plaintiff denied ever going to Mexico despite medical records indicating that she received treatment and medication in Mexico. *See* (R. 26 (citing R. 318, 334, 382)). While the transcript of the hearing reflects that Plaintiff denied ever going to Juarez, Mexico, as opposed to Mexico in general (R. 40), inconsistencies still exist between Plaintiff's testimony and the evidence in the record even when narrowing the geographical reference from Mexico to Juarez, Mexico. For example, reference to medical treatment in Juarez, specifically treatment of injections for pain, is made in one of the three exhibits cited by the ALJ. *See* (R. 334).

Further, the ALJ notes other inconsistencies between Plaintiff's statements and other parts of the evidence in the record. The ALJ noted that Plaintiff testified at the hearing that she never goes out of the house but later admitted that she goes to church every week. (R. 26). The ALJ also noted Plaintiff's testimony that she could not remember her work history, but there were no diagnoses in her medical records for memory issues. *Id.* The ALJ found that "[t]hese misrepresentations significantly erode the persuasiveness and reliability of the claimant's allegations of disability." (R. 26).

The ALJ also considered the medical evidence in the record and noted several instances of findings of normal strength, (R. 336, 407); normal gait, (R. 407, 527); normal or full range of motion, (R. 336, 527); normal motor observed, (R. 336, 527); normal sensory observed, (R. 336); inconsistent use of a cane for ambulation, (R. 345–375); reports of feeling "good" with "no issues," (R. 345, 355), being "on her feet 'all day,'" (R. 356), and failing to fill her prescription prescribed for lumbago, (R. 507). *See* (R. 26–28). Based on these reasons and evidence, as stated in the ALJ's decision, the Court finds substantial evidence supports the ALJ's RFC finding that included no standing or walking limitations.

### III.     CONCLUSION

**IT IS ORDERED** that the decision of the Commissioner will be **AFFIRMED**.

**SIGNED** and **ENTERED** this ___25ᵗʰ___ day of March, 2019.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE